UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

VALERIE STRODE,

    Plaintiff,

v.                                    Case No: 2:19-cv-669-JLB-NPM

WAL-MART STORES, INC. (n/k/a Walmart,
Inc. and Wal-Mart Stores East, LP),

    Defendant.

## ORDER

Plaintiff Valerie Strode slipped and fell inside a Walmart store and now sues Defendant Wal-Mart Stores East, LP ("Walmart") for negligence under Florida law. (Doc. 1-1.) Walmart moves for summary judgment, arguing that Ms. Strode has failed to demonstrate that it had actual or constructive knowledge of the existence of a dangerous condition that purportedly caused her to fall in its store, as required by Florida Statute § 768.0755. (Doc. 28.) The Court agrees with Walmart and therefore **GRANTS** its motion for summary judgment. (Doc. 28.)

## FACTS

Construed in a light most favorable to Ms. Strode, the non-moving party here, the facts are as follows. On August 24, 2015, Ms. Strode and her son, Stephen, visited their local Walmart for groceries and school supplies. (Doc. 28-2 at 99:21–100:3, 101:17–18, 105:3–5.) Although she could not recall for certain, Ms. Strode did not believe it had rained earlier that day. (Doc. 28-3 at 108:6–14.) As she and her son were walking in the Walmart store, Ms. Strode's legs went out from

underneath her. (Id. at 108:15–19.) After she got up, Ms. Strode noticed a small amount of "orange-ish" liquid that her flip-flop had smeared. (Id. at 112:15–113:4.) Ms. Strode and her son did not see anything on the floor before she slipped. (Id. at 109:9–12; Doc. 28-4 at 24:4–6.) Ms. Strode had been to this store more than 100 times and did not recall seeing anything on the floor in that area of the store during her prior visits. (Doc. 28-2 at 104:19–105:2, 105:9–14.)

The liquid was free of any dirt or track marks except for what dirt Ms. Strode's flip-flop transferred when she stepped in and smeared the liquid. (Id. at 113:5–8, 114:4–8.) Otherwise, Ms. Strode does not know what the liquid was, where it came from, or how long it was on the floor before she slipped and fell. (Id. at 112:23–24, 113:15–19, 115:9–11.) Her son similarly could not recall what the liquid was, where it came from, if it was dirty, or how long it had been on the floor. (Doc. 28-4 at 26:1–23, 27:1–3.)

Franklin Oliver, Walmart's corporate representative, identified an employee named Sean Anderson who had spent a "significant amount of time" stocking the area of the fall that evening. (Doc. 28-6 at 38:1–12, 57:11–15.) The store's video footage (CCTV) shows Mr. Anderson leaving the area only "16 to 17 seconds" before Ms. Strode's fall. (Id. at 61:12–17; Doc. 28-7 at 10:36:17.)[1] Mr. Oliver testified that "part of [Mr. Anderson's] job was to monitor the floor for any type of liquid that

---

[1] The CCTV footage is contained in Exhibit F of Walmart's motion for summary judgment. (Doc. 28-7.) Walmart provided the Court with a CD-ROM showing two angles of the store, spanning about an hour before and after the accident. But the footage is somewhat blurry, and a product stand blocks the exact area where Ms. Strode fell.

could be there and cause a customer such as Miss Strode to fall." (Doc. 28-6 at 57:11–16.) While this is specifically part of Walmart's "inclement weather procedures," its policy also requires all associates "to be constantly looking on the floor for spills or liquid or anything like that," even when its employees are doing other tasks (e.g., stocking.) (Id. at 37:11–15.) Walmart also employs maintenance associates who, unlike Mr. Anderson, are specifically tasked with walking through the store and identifying safety hazards. (Id. at 21:25–22:3, 22:14–15, 59:1–8.)

Walmart, relying on CCTV footage, argues that an employee inspected the area about two minutes before Ms. Strode fell and another employee inspected the floor one minute before the fall, and that neither saw any liquid on the floor. (Doc. 28 at 7, ¶ 19 (citing Doc. 28-7 at 10:34:26–10:35:40).) Although the footage shows two employees walking in that area, and one appears to be walking with his or her head down and facing the floor, the quality of the video is too poor to determine whether this was an "inspection." Walmart even concedes that "the surveillance footage is not clear enough to establish the Walmart employees' direct line of vision." (Doc. 31 at 3.) In all events, Ms. Strode asserts that other evidence supports an inference that no employee inspected the floor for at least fifteen minutes. (Doc. 30 at 5.)[2]

---

[2] About fifteen minutes before the accident, the footage shows an employee placing a small box on the floor. (Doc. 28-7 at 10:19:57.) Mr. Oliver testified that it is unsafe to leave a box on the floor, and Walmart's policy dictates that an employee should pick up the box as soon as he or she sees it. (Doc. 28-6 at 10:11–22.) Despite several employees walking by, including Mr. Anderson, the box remains on the floor for over an hour. (Id. at 21:17–24; see also Doc. 28-7.) Mr. Oliver could not explain whether a maintenance associate also missed the box

Sabrina Bouie, another Walmart employee, provided a statement after the accident.  (Doc. 28-5 at 5; Doc. 28-6 at 7:6–8:3.)  Ms. Bouie claimed she saw a trail of drops one aisle over from where Ms. Strode fell.  (Doc. 28-5 at 5.)  Ms. Bouie stated that, as she was cleaning down that aisle, she turned the corner and saw Ms. Strode.  (Id.)  She observed what she believed was juice leaking from a cart.  She noted that the "substance was clear with a yellowish tint to it.  It was fresh, not dirty or tracked."  (Id.)  This is the only evidence of the "orange-ish" liquid's potential source.  But CCTV footage shows, and Mr. Oliver testified, that she "wasn't cleaning and just happened to come upon" Ms. Strode.  (Doc. 28-6 at 54:6–56:20.)

Rather, Ms. Strode testified that no one was near her when she fell and that she sent her son to "get somebody."  (Doc. 28-3 at 109:14–18, 110:8–13.)  Stephen thereafter located Ms. Bouie.  (Doc. 28-4 at 28:12–22; Doc. 28-6 at 55:2–56:20.)  Ms. Bouie can be seen following Stephen to Ms. Strode, and Ms. Bouie does not appear to be carrying any cleaning equipment.  (Doc. 28-7 at 10:36:57–10:37:14.)  CCTV footage does not show any cart leaking "yellowish" juice, as Ms. Bouie had claimed.  Moreover, nowhere else in the record is there evidence of the liquid's source.[3]

---

during a safety sweep or if the associate had not yet inspected the area.  (Doc. 28-6 at 22:4–20.)  In short, it is reasonable to infer that the employees working in the area had not inspected the floor before Ms. Strode's accident.

[3] Granted, the display stand blocking the cameras' views of the area may obscure this cart.  But multiple Walmart employees can be seen cleaning the area following the fall and no one ever moves a cart into view.  Mr. Anderson and assistant manager Dawn Hobson also "saw and/or examined the area . . . just after

Similarly, Ms. Strode's and Mr. Oliver's accounts of what happened is not entirely accurate either. Mr. Oliver, relying on CCTV footage, testified that no one else walked through the area after Mr. Anderson left and before Ms. Strode's fall. (Doc. 28-6 at 36:22–37:7.) But the footage shows that, just as Mr. Anderson leaves the area, a man in a white shirt and black shorts pushing a cart directly over the area where Ms. Strode slips eleven seconds later. (Doc. 28-7 at 10:36:17.) No other employee is in that area when this man crosses the spot where Ms. Strode fell. And, as Ms. Strode testified, no employee returns to that area until after her fall. Again, the footage is not clear enough to say one way or the other if this man caused a spill. But the evidence clearly shows someone walking through the area after Mr. Anderson left and while no other employee is present.

This is the entirety of the record before the Court. Beyond this, it remains unclear: (1) what the liquid was; (2) where it came from; (3) or how long it was on the floor. Walmart moves for summary judgment on Ms. Strode's negligence claim, arguing that "the only evidence that Plaintiff has come forward with is that the floor was wet and that she slipped and fell." (Doc. 28 at 12.) Walmart maintains "there is not a scintilla of evidence to establish [that it] had actual or constructive notice of the alleged liquid in the area," and that Ms. Strode "has failed to produce any evidence that establishes the length of time the alleged liquid was on the floor." (Id. at 12–13.) Ms. Strode responds that the "actual evidence . . . is that a Walmart

---

it happened" but did not mention a cart leaking juice. (Doc. 28-5 at 4–5.) And neither Ms. Strode nor her son claim there was a cart leaking juice next to where Ms. Strode fell.

employee was in the exact area where Strode fell for a significant amount of time and should have seen the liquid." (Doc. 30 at 2.)

Ms. Strode contends that Mr. Oliver's testimony that Mr. Anderson "should have seen the liquid that was on the floor that caused Ms. Strode to fall" is an "admission" that Walmart had constructive knowledge of the liquid. (Id. (quoting Doc. 28-6 at 61:8–17).) Lastly, Ms. Strode asserts, "evidence that no inspection had been made for a particular period of time prior to an accident . . . warrants an inference that the dangerous condition existed long enough so that the exercise of reasonable care would have resulted in discovery." (Id. at 8.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In other words, summary judgment is warranted if a jury, viewing all facts and any reasonable inferences therefrom in the light most favorable to plaintiffs, could not reasonably return a verdict in plaintiffs' favor." Hale v. Tallapoosa Cnty., 50 F.3d 1579, 1581 (11th Cir. 1995) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). "Only when that burden has been met does the burden shift to the non-moving party to

demonstrate that there is indeed a material issue of fact that precludes summary judgment." Id.

Crucially, "an inference is not reasonable if it is 'only a guess or a possibility,' for such an inference is not based on the evidence but is pure conjecture and speculation." Daniels v. Twin Oaks Nursing Home, 692 F.2d 1321, 1324 (11th Cir. 1982) (quoting Smith v. Gen. Motors Corp., 227 F.2d 210, 213 (5th Cir. 1955)). Although all inferences are "at least partially conjectural," a trier of fact "will not be allowed to engage in a degree of speculation and conjecture that renders its finding a guess or merely possibility." Id. at 1326 (citing Helene Curtis Indus., Inc. v. Pruitt, 385 F.2d 841, 851 (5th Cir. 1967)).

## DISCUSSION

### I. Ms. Strode must show that Walmart had actual or constructive knowledge of the liquid.

Under Florida law, Walmart owed Ms. Strode a duty: "(1) to take ordinary and reasonable care to keep its premises reasonably safe . . . ; and (2) to warn of perils that were known or should have been known to [Walmart] of which [Ms. Strode] could not discover." Norman v. DCI Biologicals Dunedin, LLC, 301 So. 3d 425, 428 (Fla. 2d DCA 2020) (citation omitted).

But because Ms. Strode slipped "on a transitory foreign substance in a business establishment," the Florida Legislature has mandated she "must prove that [Walmart] had actual or constructive knowledge of the dangerous condition and should have taken action to remedy it." Fla. Stat. § 768.0755(1). Ms. Strode neither argues that Walmart had actual notice of the liquid nor that similar

accidents happened with such regularity that the condition was foreseeable. Id. § 768.0755(1)(a)–(b). Therefore, Ms. Strode must demonstrate that Wal-Mart had constructive knowledge by presenting circumstantial evidence that the "dangerous condition existed for such a length of time that, in the exercise of ordinary care, [Walmart] should have known of the condition." Id. § 768.0755(1)(a).

Ms. Strode cannot survive summary judgment simply by relying on evidence that shows, for a snapshot moment in time, "(1) that the floor was wet; and (2) she slipped and fell." Delgado v. Laundromax, Inc., 65 So. 3d 1087, 1090 (Fla. 3d DCA 2011). "[T]he record must contain additional facts to create a permissible inference regarding the amount of time the [liquid] had been on the floor." Palavicini v. Wal-Mart Stores East, LP, 787 F. App'x 1007, 1013 (11th Cir. 2019) (citing Delgado, 65 So. 3d at 1090). "If a plaintiff does not identify evidence to suggest the length of time that a liquid was on the floor, there is no genuine dispute of material fact, and a defendant is entitled to summary judgment." Espinoza v. Target Corp., 843 F. App'x 168, 171 (11th Cir. 2021) (collecting Florida cases affirming summary judgment when the plaintiff did not establish approximately how long substance was on floor prior to plaintiff's fall).

## II.    The lack of an inspection alone is not sufficient circumstantial evidence.

The crux of Ms. Strode's opposition is that "Walmart admits under oath that its employee should have seen the dangerous liquid that caused Ms. Strode to fall." (Doc. 30 at 3.) In support, she cites a line of Florida cases recognizing that "a proprietor of a public building may be liable if, by the exercise of reasonable

prudence, [it] should have discovered the dangerous condition" injuring an invitee. Jenkins v. Brackin, 171 So. 2d 589, 590–91 (Fla. 2d DCA 1965) (collecting cases). But those cases explain that an employee's failure to discover a liquid may impute constructive knowledge on the business when the employee "could have seen the spilled substance from his vantage point." Winn-Dixie Stores, Inc. v. Guenther, 395 So. 2d 244, 245–46 (Fla. 3d DCA 1981). Those cases also instruct that an employee's proximity to where the fall occurs may be enough to create a jury question about constructive knowledge in certain circumstances. See, e.g., Markowitz v. Helen Homes of Kendall Corp., 826 So. 2d 256, 261 (Fla. 2002) (employees in immediate vicinity failing to discover transitory foreign substance was circumstantial evidence).

But evidence of Walmart's employees' mere failure to conduct an inspection, without more, will not carry the day for Ms. Strode under section 768.0755. "First, 'the fact there was no inspection for a given length of time in itself provides no proof that the defect was actually there for a sufficient period to place a landowner on reasonable notice of its existence.'" Espinoza, 843 F. App'x at 172 (quoting Wal-Mart Stores, Inc. v. King, 592 So. 2d 705, 707 (Fla. 5th DCA 1991)).[4] Rather, "a

---

[4] In enacting section 768.0755, Florida's legislature repealed section 768.0710, which did not require a showing of actual or constructive knowledge. Under the former section 768.0710, a plaintiff could merely show "the business premises acted negligently by failing to exercise reasonable care in the maintenance, inspection, repair, warning, or mode of operation of the business premises." Pembroke Lakes Mall Ltd. v. McGruder, 137 So. 3d 418, 426 (Fla. 4th DCA 2014) (emphasis added) (quoting Fla. Stat. § 768.0710 (2002)). By contrast, section 768.0755 now requires circumstantial evidence about how long a substance was on the floor.

lack of inspection for spills can circumstantially help establish constructive knowledge of the existence of the spill for the time period since the last inspection, when coupled with other circumstantial evidence." Greenleaf v. Amerada Hess Corp., 626 So. 2d 263, 264 (Fla. 4th DCA 1993) (emphasis added) (citing Teate v. Winn Dixie Stores, Inc., 524 So. 2d 1060 (Fla. 3d DCA 1988)).[5]

Therefore, an employee's failure to inspect an area or his noncompliance with an inspection policy may constitute circumstantial evidence in a slip-and-fall case, but only if it indicates how long a substance was on the floor. Cf. Espinoza, 843 F. App'x at 174 n.10 (even accepting employee did not follow inspection policy, "there is no reasonable inference to be drawn about when the spill occurred and whether the puddle existed long enough to put Target on constructive notice of the dangerous condition"). Even "if no inspection occurred for over an hour, that is not enough to show constructive notice on its own." Borroto v. Wal-Mart Stores East, LP, No. 2:19-cv-356-FtM-38NPM, 2020 WL 6591193, at *5 (M.D. Fla. Nov. 10, 2020). Cases supporting the "proposition that failure to inspect is evidence of

---

[5] The court in Jenkins relied on the lack of an inspection plus the small size of the store and how long the plaintiff spent shopping with no other customers present. 171 So. 2d at 591. Similarly, in Guenther, the court relied on the fact that a store manage could have seen the spill plus "testimony that the liquid was dirty and scuffed and had several tracks running through it." 395 So. 2d at 246. And "the focus" in Markowitz was "not on how long the [substance] was on the floor; rather, the focus [was] on whether the practice of allowing residents to carry their food to their rooms constituted a negligent mode of operation." 826 So. 2d at 261. The Court does not read any of those cases to mean that a business automatically has constructive notice under section 768.0755 whenever it fails only to carry out an inspection that may have otherwise led to discovery of a transitory foreign substance—particularly under the facts here.

constructive notice . . . present[] additional evidence from which a jury could infer a substantial length of time existed between the last inspection and incident." Id. And, as will be explained, there is no evidence that whatever liquid Ms. Strode claimed to have slipped on was on the floor long enough to establish constructive notice under section 768.0755 regardless of Mr. Anderson's proximity. See, e.g., Bleers v. Wal-Mart Stores East, LP, No. 2:19-cv-806-SPC-NPM, 2021 WL 2106531, at *5 (M.D. Fla. May 25, 2021) ("[T]he presence of an employee in the area six minutes before the incident is not evidence the condition existed at that time and should have been discovered," particularly when another source could have created the condition in employee's absence); cf. Ayers v. Wal-Mart Stores, East, L.P., No. 15-24663-CIV-GAYLES, 2017 WL 747541, at *3 (S.D. Fla. Feb. 27, 2017) (granting summary judgment where "[a]lthough [Walmart's employee] walked by the aisle about a minute before the incident, there is no credible reason to believe that she would have or could have seen the clear substance on the floor").

### III. There is no evidence indicating how long the liquid was on Walmart's floor.

Having explained why an employee's mere lack of compliance with Walmart's inspection policy (by itself) does not satisfy Ms. Strode's burden under section 768.0755(1), the Court now addresses the remaining evidence Ms. Strode relies on to ostensibly establish the length of time the liquid was on the floor.

First, Ms. Strode maintains the "evidence is that the liquid was on the floor before Walmart's employee left the area" but before she slipped. (Doc. 30 at 10.) In support, she relies on Mr. Oliver's purported admission, which she characterizes

as "the common law and statutory definition of constructive notice." (Id. at 2.) But this is an incorrect characterization. The problem with this "admission" is that it rests on a faulty premise that the record clearly contradicts, namely that the liquid was actually on the floor for a Walmart employee to notice it in the first instance.

Specifically, Mr. Oliver agreed that Mr. Anderson should have seen the liquid "<u>if</u> there was liquid on the floor" while he was working in the same area for a "significant amount of time." (Doc. 28-6 at 38:11–17 (emphasis added).) This, of course, presupposes that the spill was actually there for Mr. Anderson to discover. Mr. Oliver's response was to a question containing a conditional statement. In fact, later in the deposition, Ms. Strode's attorney referenced the Walmart incident report stating that a liquid was on the floor where Ms. Strode slipped. (Id. at 61:1–4.) Based on the contents of that report, Mr. Oliver agreed with Ms. Strode's attorney that Mr. Anderson "should have seen the liquid that <u>was</u> on the floor." (Id. at 61:12–17 (emphasis added).) Once again, this line of questioning and Mr. Oliver's purported "admission," <u>read in context</u>, assumes the liquid was on the floor before Mr. Anderson left the area, not after. But Mr. Oliver's concessions (and Ms. Strode's subsequent reliance) sprang forth from the erroneous assumption that no "other customer [] could have went by and plopped something on the floor that could have caused Miss Strode to fall" after Mr. Anderson left the area. (See id. at 36:22–37:3.)

That is simply false. See Scott v. Harris, 550 U.S. 372, 380 (2007) ("[A] court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment" when the record blatantly contradicts a party's story); Buckman v. Morris, 736 F. App'x 852, 853 (11th Cir. 2018) ("[W]hen an incident is recorded and the video obviously contradicts the plaintiff's version of events, courts will accept the video's depiction of the events as controlling [on summary judgment]." (quotation omitted)). As noted, CCTV footage shows a man in a white shirt pushing his shopping cart over the exact area of the accident, eleven seconds before Ms. Strode fell and with no Walmart employee visible on the CCTV footage. It is of no consequence that Mr. Anderson spent a "significant amount of time" in the area before that because there is no evidence that the liquid was present while he was also in that area. Indeed, the man in the white shirt could have spilled the "orange-ish" liquid mere moments after Mr. Anderson left.[6]

At bottom, viewing the entire record in a light most favorable to Ms. Strode, either the liquid was on the floor before Mr. Anderson left the area, or the man in the white shirt spilled it afterwards. Be that as it may, no jury can reasonably

---

[6] Even in Markowitz, which Ms. Strode argues is "exactly like" her case (Doc. 30 at 14), the evidence showed that employees were in the "immediate vicinity" of the substance and could see the substance on the floor had they looked. 826 So. 2d at 261. The reasonable inference there being the condition was on the floor at the same time that the employees were working in the area. Simply put, there is no similar inference for a jury to draw from the facts in this case. Finally, the Florida Legislature enacted section 768.0710 while Markowitz was pending and, as such, the statute was not in effect at the time of the plaintiff's accident. Again, in analyzing the plaintiff's negligent mode of operation theory, the court in Markowitz expressly stated that "the focus is not on how long the [substance] was on the floor." Id. at 261.

infer the liquid was on the floor while Mr. Anderson was working in the area and that it existed long enough such that he should have discovered the substance. See Oliver v. Winn-Dixie Stores, Inc., 291 So. 3d 126, 129 (Fla. 4th DCA 2020) (explaining that an unclear surveillance video in a case involving section 768.0755 "does not create a material issue of fact").  Although the Court must draw all reasonable inferences in Ms. Strode's favor, "an inference based on speculation and conjecture is not reasonable."  Ave. CLO Fund, Ltd. v. Bank of Am., N.A., 723 F.3d 1287, 1294 (11th Cir. 2013) (citation omitted); Vermeulen v. Worldwide Holidays, Inc., 922 So. 2d 271, 273 (Fla. 3d DCA 2006) ("The mere happening of an accident does not give rise to an inference of negligence . . . . Mere speculation or inference of negligence is insufficient to defeat summary judgment.").

Moreover, Ms. Strode has not identified any other record evidence from which a trier of fact may reasonably infer that liquid was on the floor for a sufficient length of time to establish Walmart's constructive knowledge of the liquid. See Doudeau v. Target Corp., 572 F. App'x 970, 972 (11th Cir. 2014) (possible to infer constructive knowledge from employee testimony that it had been raining, there was standing water in parking lot, and water causing slip must have come from outside).  Ms. Strode's testimony was that the liquid did not seem to have "dirt, scuffing, or tracks" before she stepped in it, implying it was not on the floor long enough to become dirtied.  See, e.g., Pussinen v. Target Corp., 731 F. App'x 936, 937 (11th Cir. 2018) (quoting Woods v. Winn Dixie Stores, Inc., 621 So. 2d 710, 711 (Fla. 3d DCA 1993)).  Nor do the liquid's physical characteristics shed any light

over the time it was on the floor.  See, e.g., Grizzard v. Colonial Stores, Inc., 330 So. 2d 768, 769 (Fla. 1st DCA 1976) (jury could find frozen juice concentrate existed on floor long enough because it partially thawed).

Actually, what little evidence is before the Court suggests the opposite: the liquid was not on the floor for very long at all.  The liquid was free from dirt and track marks despite several individuals walking by the area in the hour before the accident.  See Bleers, 2021 WL 2106531, at *5 ("Fifteen people passed through the area between [when an employee left the area and the plaintiff slipped]—including the Cart Lady who perhaps created the condition.").  No individual seems to notice anything on the floor.  Of course, the Court may not engage in this conjecture, just as a jury could not either under Florida law.  The Court is merely doing what any finder of fact would be forced to do in this situation: improperly speculating.  And a claim which relies on speculation as to a material fact cannot survive summary judgment.  Cf. Delgado, 65 So. 3d at 1090 (granting summary judgment where record lacked "additional facts in support of liability" and failed to "create a permissible inference upon which [the plaintiff] could rely").

For these reasons, Ms. Strode has not shown any genuine issue of material fact as to Walmart's constructive knowledge about the presence of a liquid on the floor where she slipped.  And because constructive knowledge is a necessary element of this slip and fall case under section 768.0755, Walmart's motion for summary judgment (Doc. 28) is **GRANTED**.  The Clerk is **DIRECTED** to enter

judgment in favor of Defendant and against Plaintiff, terminate any pending deadlines and motions, and close the file.

**ORDERED** at Fort Myers, Florida, on September 9, 2021.

_____
JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE